UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL MORRISHOW, JR., | No. 2:12-cv-2892 CKD P |
| Petitioner, | |
| v. | ORDER |
| J. PRICE,[1] | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges a 2010 judgment of conviction in the Sacramento County Superior Court for attempting to make a criminal threat and making an annoying phone call, for which he was sentenced to a state prison term of six years and four months. Petitioner asserts that (1) his attempted criminal threat conviction was not supported by sufficient evidence in violation of his federal right to due process; and (2) the trial court abused its discretion by refusing to strike petitioner's prior violent felony conviction under California Penal Code § 1385. (ECF No. 1 ("Ptn.").)

---

[1] As J. Price is currently the Acting Warden of California State Prison–Deuel Vocational Institution, where petitioner is incarcerated, the court will grant respondent's request to substitute Price as the respondent in this action. See Fed. R. C. Proc. 25(d)(1); Brittingham v. United States, 982 F.2d 378, 379 (9th Cir. 1992).

1

Respondent has filed an answer to the petition, and respondent has filed a traverse. Both parties have consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c) and Local Rule 302. Upon careful consideration of the record and the applicable law, the court will deny the petition for writ of habeas corpus.

## BACKGROUND

I. Facts

In its affirmation of the judgment on appeal, the California Court of Appeal, Third Appellate District, set forth the relevant factual background as follows:

> Alonzo Smith broke up with his girlfriend, Shavonda Townsend, and moved into defendant's apartment. Defendant agreed to store Smith's 1977 Chevrolet Caprice. Two weeks later, however, Smith and Townsend reconciled and Smith moved out of defendant's apartment. Defendant returned the Caprice to Smith, but the following day the Caprice was stolen from outside Smith's apartment. When Smith confronted defendant regarding the theft, defendant denied involvement.
>
> Smith subsequently learned that defendant used Smith's rent money to pay another debt owed by defendant. Smith had an angry telephone conversation with defendant.
>
> Soon after, Smith and Townsend were standing outside their home with their two-year-old daughter when Smith received a number of text messages from defendant. One message challenged Smith to meet defendant in the street to resolve their differences. Townsend testified that another message said "I see you outside with red shorts on" and "I should have your heads in the trunk," or something like that. Smith testified that the second text message indicated defendant knew what Smith was wearing at the moment, and that Smith's head will be in the trunk. Smith understood this to be a threat. Defendant also sent Smith two more text messages: "[T]ell your bitch that I don't mind doing a bid," FN2 and "I'm like tic-tic-tock."
>
> FN2. A "bid" means jail time.
>
> Smith, Townsend and their daughter were afraid and left in Smith's SUV. As they drove past a nearby park, Smith and Townsend saw defendant talking to Townsend's uncle. Smith and defendant cursed at each other. Defendant got into his car and drove away. Smith and Townsend contacted the police.
>
> Defendant was subsequently arrested and charged with making a criminal threat against Smith (§ 422), being a felon in possession of a firearm (former § 12021, subd. (a)(1)), making an annoying telephone call to Townsend (§ 653m, subd. (a)), and making an annoying telephone call to Smith (§ 653m, subd. (a)). It was further

> alleged that defendant was previously convicted of assault with a firearm in Washington State.
>
> Defendant pleaded not guilty to the charges and denied the prior conviction allegation. A jury found defendant guilty of the lesser included offense of attempting to make a criminal threat against Smith, and also of making an annoying phone call to Smith. Defendant was acquitted on the charge of being a felon in possession of a firearm. The jury deadlocked on the charge of making an annoying phone call to Townsend, and the trial court declared a mistrial as to that charge.
>
> The trial court found true the prior strike allegation, denied defendant's request to dismiss the prior strike, and sentenced defendant to an aggregate term of six years four months in prison. The trial court imposed various fines and fees and awarded defendant 307 days of custody credit (205 actual and 102 conduct).

Lod. Doc. 1 at 1-4, also at People v. Morrishow, 2012 WL 1229492 (Cal. App. 3 Dist. April 12, 2012).[2] The facts as set forth by the state court of appeal are presumed correct, 28 U.S.C. §2254(e)(1), and are consistent with this court's review of the record.

II. Procedural History

On December 15, 2010, following a trial, a jury in the Superior Court of Sacramento County found petitioner guilty of attempting to make a criminal threat (Cal. Pen. Code §§ 664/422) and making an annoying phone call (Cal. Penal Code § 653m, subd. (a)). (Clerk's Transcript ("CT") 8, 147-148, 156, 158.) On January 14, 2011, the trial court found that petitioner had suffered a prior felony conviction for assault in 2004, and that this conviction qualified as a "strike" under California's Three Strikes Law. (CT 9; Reporter's Transcript ("RT") 412-413.) The court denied petitioner's "Romero" motion to dismiss the prior strike conviction pursuant to People v. Superior Court, 13 Cal.4th 497 (Romero), stating of petitioner:

> He seems like a nice guy in most respects. I sense that. For whatever it's worth. But the reality is that even a nice guy with his criminal record has to be awfully careful what he does and how he conducts himself. Because he may have the right intentions in the universe but, with this kind of criminal record, he's walking on egg shells every day because of what he's done in the past.

---

[2] Lodged documents refer to documents lodged by respondent on February 28, 2013. (ECF No. 14.)

3

(RT 414.) The trial court concluded that, in light of petitioner's prior criminal record, including "a burglary . . . a prior serious felony . . ." and other offenses, petitioner did not properly "fall outside the spirit of the [T]hree [S]trikes sentencing scheme" so as to warrant discretionary dismissal of the prior strike (RT 422, 433-434), and sentenced petitioner to an aggregate term of six years four months in prison, including a five-year enhancement for the prior strike. (CT 9; RT 444.)

On June 17, 2011, petitioner appealed his conviction to the California Court of Appeal, Third Appellate District. (Lod. Doc. 2.) On April 12, 2012, the California Court of Appeal affirmed the judgment. (Lod. Doc. 1.)

Petitioner then filed a petition for review in the California Supreme Court. (Lod. Doc. 3.) On June 20, 2012, the California Supreme Court denied review. (Lod. Doc. 5.)

On November 28, 2012, petitioner filed the instant federal habeas petition. (Ptn.) Respondent filed an answer on February 22, 2013, followed by an amended answer on February 26, 2013. (ECF Nos. 12, 13.) Petitioner filed a traverse on April 23, 2013. (ECF No. 17.)

## ANALYSIS

I. AEDPA

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have

1  been 'adjudicated on the merits.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011).
2  Rather, "when a federal claim has been presented to a state court and the state court has denied
3  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence
4  of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris
5  v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear
6  whether a decision appearing to rest on federal grounds was decided on another basis). "The
7  presumption may be overcome when there is reason to think some other explanation for the state
8  court's decision is more likely." Id. at 785.

9  The Supreme Court has set forth the operative standard for federal habeas review of state
10 court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an unreasonable
11 application of federal law is different from an incorrect application of federal law.'" Harrington,
12 supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410 (2000). "A state court's
13 determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded
14 jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing
15 Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "a habeas court must
16 determine what arguments or theories supported or ... could have supported[] the state court's
17 decision; and then it must ask whether it is possible fairminded jurists could disagree that those
18 arguments or theories are inconsistent with the holding in a prior decision of this Court." Id.
19 "Evaluating whether a rule application was unreasonable requires considering the rule's
20 specificity. The more general the rule, the more leeway courts have in reaching outcomes in
21 case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops
22 short of imposing a complete bar of federal court relitigation of claims already rejected in state
23 court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not
24 mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade,
25 538 U.S. 63, 75 (2003).

26 The undersigned also finds that the same deference is paid to the factual determinations of
27 state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct
28 subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a

5

1   decision that was based on an unreasonable determination of the facts in light of the evidence
2   presented in the state court proceeding." It makes no sense to interpret "unreasonable" in §
3   2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the
4   factual error must be so apparent that "fairminded jurists" examining the same record could not
5   abide by the state court factual determination. A petitioner must show clearly and convincingly
6   that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338 (2006).
7   The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable
8   nature of the state court decision in light of controlling Supreme Court authority. Woodford v.
9   Viscotti, 537 U.S. 19 (2002). Specifically, the petitioner "must show that the state court's ruling
10  on the claim being presented in federal court was so lacking in justification that there was an error
11  well understood and comprehended in existing law beyond any possibility for fairminded
12  disagreement." Harrington, supra, 131 S. Ct. at 786-787. Clearly established" law is law that has
13  been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S.
14  120, 125 (2008). Thus, extrapolations of settled law to unique situations will not qualify as
15  clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established law not
16  permitting state sponsored practices to inject bias into a criminal proceeding by compelling a
17  defendant to wear prison clothing or by unnecessary showing of uniformed guards does not
18  qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).
19  The established Supreme Court authority reviewed must be a pronouncement on constitutional
20  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules
21  binding only on federal courts. Early v. Packer, 537 U.S. 3, 9 (2002).

22      The state courts need not have cited to federal authority, or even have indicated awareness
23  of federal authority in arriving at their decision. Early, supra, 537 U.S. at 8. Where the state
24  courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal
25  court will independently review the record in adjudication of that issue. "Independent review of
26  the record is not de novo review of the constitutional issue, but rather, the only method by which
27  we can determine whether a silent state court decision is objectively unreasonable." Himes v.
28  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of the claim. Id. at 1097.

II. Petitioner's Claims

A. Insufficient Evidence

Petitioner argues that his conviction for attempting to make a criminal threat must be reversed as it was not supported by substantial evidence, violating his federal Constitutional right to due process of law.

1. State Court Opinion

In the last reasoned state court decision to address this claim[3], the court of appeal reasoned as follows:

> Defendant contends there was insufficient evidence to support his conviction for attempting to make a criminal threat. He argues the prosecution failed to prove the threat was immediate and unconditional or that the victim experienced sustained fear.
>
> "'In reviewing the sufficiency of the evidence under the due process clause of the Fourteenth Amendment to the United States Constitution, the question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' ([People v.] Rowland [(1992)] 4 Cal.4th [238,] 269, quoting Jackson v. Virginia (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560].) We apply an identical standard under the California Constitution. (Ibid.) 'In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."' (People v. Johnson (1980) 26. Cal.3d 557, 576.)" (People v. Young (2005) 34 Cal.4th 1149, 1175.)

---

[3] Where there is no reasoned decision from the state's highest court, the court "looks through" to the last reasoned state court decision. Y1st v. Nunnemaker, 501 U.S. 797, 801–806 (1991); Van Lynn v. Farmon, 347 F.3d 735 (9th Cir. 2003).

The testimony of a single witness suffices to support a factual finding unless the testimony is inherently improbable or physically impossible. (People v. Young, supra, 34 Cal.4th at p.1181.) When the evidence supports the conviction, we will not disturb the judgment even if the other evidence presented at trial might have supported an acquittal. (People v. Abilez (2007) 41 Cal.4th 472, 504.)

Section 422 provides in pertinent part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing , or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

In assessing whether the words were sufficiently unequivocal, unconditional, immediate and specific to convey to the victim an immediacy of purpose and an immediate prospect of execution of the threat, we consider the defendant's statement in light of all the surrounding circumstances. (People v. Mendoza (1997) 59 Cal.App.4th 1333, 1340.)

Defendant sent Smith a text message indicating that he knew what Smith was wearing at the moment. This indicated that defendant could see Smith even though Smith could not see defendant. The text also informed Smith that his head would be in the trunk. Smith understood this to be a threat. Defendant then sent two more text messages saying, "[T]ell your bitch that I don't mind doing a bid," and "I'm like tic-tic-tock."

Defendant argues the threat was not immediate but "framed in the past tense" because Smith remembered defendant's message saying defendant "could have" had their heads in the trunk. He argues the same language indicates defendant lacked the requisite intent. We conclude, however, that defendant's statements established the requisite intent, and also conveyed the immediate prospect of inflicting great bodily injury or death on Smith. Defendant noted what Smith was wearing, which a trier of fact could infer indicated proximity and Smith's vulnerability, because defendant could see Smith but Smith could not see defendant. Defendant texted that Smith's head will be in the trunk and that defendant was willing to go to jail. Defendant also made reference to the ticking of a clock, which a trier of fact could infer indicated immediacy.

The jury necessarily found that defendant intended to make a threat, intended his texts to be taken as a threat, and that the threat was immediate and unconditional. Viewing the evidence in a light most

8

> favorable to the judgment, we conclude the evidence supports the verdict.
>
> Defendant further argues there is insufficient evidence that Smith experienced sustained fear as a result of the threat. But even if that is true, the evidence supports the conviction on the lesser included offense of attempted criminal threat. In People v. Toledo (2001) 26 Cal.4th 221, the California Supreme Court explained that a defendant may be found guilty of the lesser included offense of attempted criminal threat when a threat is made with the requisite intent and is understood by the victim as a threat, but the victim is not placed in sustained fear for his or her safety. (Id. at p. 231.)

Morrishow, 2011 WL 1229492, at **4-10.

2. Legal Standard

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982-83 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275 & n. 13.

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. Adamson v. Ricketts, 758 F.2d 441, 448 n. 11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the

inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004).

3. Analysis

a. Elements of Attempted Criminal Threat

A federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. See Jackson, 443 U.S. at 324 n. 16. Petitioner was convicted attempting to make a criminal threat pursuant to Cal. Penal Code § 664/422. The California Supreme Court has analyzed the elements of this offense by, first, setting forth the elements of the crime of criminal threat as follows:

> In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement ... is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, ... so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.

People v. Toledo, 26 Cal. 4th 221, 227-228 (2001).[4]  The jury found petitioner not guilty of the

---

[4] At petitioner's trial, the instruction on the offense of criminal threat (§ 422) set forth the elements of proof as follows (excluding definitions):

> To prove that the defendant is guilty of this crime, the People must prove that:
>
> 1. The defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to Alonzo Smith;
>
> 2. The defendant made the threat by electronic communication device;
>
> 3. The defendant intended that his statement be understood as a threat and intended that it be communicated to Alonzo Smith;

crime of making a criminal threat.  (RT 148.)

The California Supreme Court continued that "a defendant properly may be found guilty of attempted criminal threat" pursuant to § 664

> whenever, acting with the specific intent to commit the offense of criminal threat, the defendant performs an act that goes beyond mere preparation and indicates that he or she is putting a plan into action. Furthermore, . . . a defendant acts with the specific intent to commit the offense of criminal threat only if he or she specifically intends to threaten to commit a crime resulting in death or great bodily injury with the further intent that the threat be taken as a threat, under circumstances sufficient to convey to the person threatened a gravity of purpose and an immediate prospect of execution so as to reasonably cause the person to be in sustained fear for his or her own safety or for his or her family's safety.

Id. at 230-231.  Circumstances that "fall within the reach of the offense of attempted criminal threat" include those where "a defendant, acting . . . with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not actually cause the threatened person to be in sustained fear for his or her safety, even though, under the circumstances," such fear would be reasonable.  Id. at 231 (italics in original).[5]

---

> 4. The threat was so clear, immediate, unconditional, and specific that it communicated to Alonzo Smith a serious intention and the immediate prospect that the threat would be carried out;
>
> 5. The threat actually caused Alonzo Smith to be in sustained fear for his own safety or for the safety of his immediate family;
>
> AND
>
> 6. Alonzo Smith's fear was reasonable under the circumstances.

CT 131.

[5] At petitioner's trial, the instruction on the lesser crime of attempt to commit a criminal threat (§422) set forth the elements of proof as follows (excluding definitions):

> To prove that the defendant is guilty of this crime, the People must prove that:
>
> 1. The defendant took a direct but ineffective step toward committing criminal threats.
>
> AND

11

b. <u>Sufficiency of the Evidence</u>

The state court applied the <u>Jackson</u> standard by asking whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. Its analysis focused on four communications by petitioner: (1) the "red shorts" message, (2) the "head in the trunk" message, (3) the "doing a bid" message, and (4) the "tick tick" message.

These texts were sent in the aftermath of a heated telephone argument between two extended-family members with no history of violent conflict in the nine months they had known each other. Until recently, the relationship had been "friendly," with petitioner and his family going to Smith's house weekly to socialize, and Smith and petitioner "hanging out." (RT 111-114, 117.) However, the relationship had recently "gone sour." (RT 123.) Smith knew of petitioner's criminal history and testified that this affected how "serious[ly"]" he took the messages. (RT 126-127.)

As to (1), the state court reasonably concluded that "a trier of fact could infer [the "red shorts" message] indicated proximity and Smith's vulnerability, because defendant could see Smith but Smith could not see defendant."

As to (2), there is some confusion as to what the text actually said. The state court of appeal described this message as "text[ing] that Smith's head will be in the trunk." Indeed, at trial, Townsend testified that the message read "I should have your heads in the trunk, or something like that." (RT 61.) Smith similarly testified that, to his recollection, the message said "that my head will be in the trunk[.]" (RT 126.) Later, however, Smith clarified that the message said "I *could have* put your head in the trunk." (RT 153) (emphasis added).

/////

---

2. The defendant intended to commit criminal threats.

(CT 133.) The instruction further provided: "A person who attempts to commit criminal threats is guilty of attempted criminal threats even if, after taking a direct step towards committing the crime, he abandoned further efforts to complete the crime or if his attempt failed or was interrupted by someone or something beyond his control. On the other hand, if a person freely and voluntarily abandons his plan before taking a direct step toward committing criminal threats, then that person is not guilty of attempted criminal threats." (<u>Id.</u>)

Petitioner asserts that the message actually read: "I could have let you have it wit yo head in the back of the truck!" (ECF No. 17 at 12.) Attached to the petition are purported photographs of the text messages which appear to support this assertion. (Ptn. at 21-22.) At trial, defense Exhibits D and E displayed the contents of the text messages, saved on Smith's phone. (RT 208-210.) As the trial court stated, the messages read: "I see you with them red shorts on, Nigga. I could have let you have it with your head in the back of the trunk." (RT 210.) While defense Exhibits D and E are not part of the appellate record to be considered on federal habeas review, the trial transcript confirms that the message was phrased as "could have," not "will."[6]

Petitioner asserts that this message, stating that he "could have" done something, was not intended as a threat of harm but merely "talking smack," "joshing," or "talking trash." (ECF No. 17 at 12.) Because it did not refer to some immediate or future action, it is ambiguous as to threatening intent and/or effect. Under California law,

> [i]n determining whether conditional, vague, or ambiguous language constitutes a violation of section 422, the trier of fact may consider the defendant's mannerisms, affect, and actions involved in making the threat as well as subsequent actions taken by the defendant. And, just as affirmative conduct and circumstances can show that a criminal threat was made, the absence of circumstances that would be expected to accompany a threat may serve to dispel the claim that a communication was a criminal threat.

Wilson, 186 Cal. App. 4th at 807-808. Here, petitioner's mannerisms and affect are not a factor, as the messages were sent via text. He took no contemporaneous actions except to send the other texts at issue, as well as – a few minutes later – a text stating: "[C]heck this Nigga. I'm going . . . to get your lil . . . pennies back to you, and you just stay on yo side, and I will do the same. [I]f that's not what you want, let me know so I can just keep this change and we could go from there." (RT 215-216.) Around this time, Smith drove by a nearby park and saw petitioner conversing with Townsend's uncle. As the state court recounts, Smith approached petitioner, and the two exchanged curses before Smith got in his car and drove away. On this record, there is little

---

[6] Whether the final word was "truck" or "trunk" does not matter for purposes of this analysis.

13

"affirmative conduct" to show that petitioner intended to threaten great bodily injury or death to Smith, except for (arguably) the other messages at issue.

Moving on to (3), in which petitioner texted, "Tell your bitch that I don't mind doing a bid," the state court reasonably concluded that this meant petitioner was "willing to go to jail." However, it lacks specificity as to any particular criminal and/or violent conduct.

Finally, the state court of appeal described (4) as a "reference to the ticking of a clock, which a trier of fact could infer indicated immediacy." At the bottom of the "red shorts/head in the trunk" message were the words: "I'm 'da bomb, like tick, tick." (RT 211-212.) Petitioner asserts that these were song lyrics, and the trial court ascertained that they were a "signature" affixed to any text message from the outgoing phone. (RT 211-212.) Because it was automatically generated and not directed at Smith, the "tick tick" phrase has no bearing on petitioner's intent to threaten. At trial, Smith did not testify about the "tick tick" phrase or its effect it him, and Townsend described it as a "signature . . . [t]he text message . . . on the bottom of the actual message." (RT 63.) Thus there is no evidence that these words conveyed the "immediacy" of a threat to either Smith or Townsend.

The question is whether these four phrases support a reasonable finding that petitioner was guilty beyond a reasonable doubt of the crime of attempted criminal threat. Taken together, as set forth above, they conveyed the following message: I'm watching you right now, I "could have" hurt/killed you, and I don't mind going to prison. Drawing all conflicting evidence in favor of conviction and applying the deferential AEDPA standard of review, the undersigned concludes that the state court's denial of petitioner's due process claim was not objectively unreasonable. Thus petitioner is not entitled to federal habeas relief on this basis.

B. Prior Strike

Petitioner claims that the trial court abused its discretion by declining to strike his 2004 prior strike during sentencing. In the last reasoned decision on this claim, the state court of appeal wrote:

> Defendant also contends the trial court abused its discretion in denying his motion to dismiss the prior strike conviction pursuant to People v. Superior Court (Romero) (1996) 13 Cal.4th 497

(Romero).  He argues the trial court gave too little weight to the nonviolent nature of his current offense.

Penal Code section 1385 gives the trial court the authority, on its own motion or upon application of the prosecution, "and in furtherance of justice," to order an action dismissed. (§ 1385, subd. (a).)  In Romero, our Supreme Court held a trial court may utilize section 1385 to strike or vacate a prior conviction allegation for purposes of sentencing under the three strikes law, "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (Romero, at p. 504.) Likewise, a trial court's "failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (People v. Carmony (2004) 33 Cal.4th 367, 374.)

In ruling on a Romero motion, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (People v. Williams (1998) 17 Cal.4th 148, 161.)

Dismissal of a strike is a departure from the sentencing norm. Therefore, in reviewing a Romero decision, we will not reverse for abuse of discretion unless the defendant shows the decision was "so irrational or arbitrary that no reasonable person could agree with it." (People v. Carmony, supra, 33 Cal.4th at p. 377.)  Reversal is justified where the trial court was unaware of its discretion to strike a prior strike, or refused to do so at least in part for impermissible reasons.  (Id. at p. 378.)  But where the trial court, aware of its discretion, "'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]." (Ibid.)

Defendant contends "the relevant facts demonstrate that this case is little more than an intra-familial spat possibly motivated by hard feelings."  Thus, he argues it was an abuse of the trial court's discretion to refuse to strike his 2004 conviction for assault with a firearm. We disagree.

In denying defendant's Romero request, the trial court expressly stated that it considered defendant's background, character, prospects for rehabilitation, and propensity for violence. The trial court explained, "I would note that in our current case there is no violence. I would further note that in our case that may play into the Court's ultimate decision on the judgment and sentencing which is yet to come. But based on the circumstances and the history of the defendant here, the motion to strike the prior is denied."

Defendant's criminal history supports the trial court's decision. In 1996, when defendant was 16 years old, he was committed to the

15

> California Youth Authority for escaping from a juvenile facility (Welf. & Inst. Code, § 871, subd. (a)). He was subsequently convicted in 2003 for residential burglary in the State of Washington. During the commission of the burglary, defendant and another individual forced their way into the victim's home, beat her, waved a gun at her, and then hit her over the head with a vase before leaving. That same year, defendant was convicted of misdemeanor theft.
>
> Defendant was convicted of assault with a pistol in 2004. Three months later, he was convicted of second degree assault. The following year defendant received two more convictions for assault.
>
> In 2006, defendant was arrested on federal weapons charges and for being a felon in possession of a firearm. He was granted supervised release two years later and twice violated the terms of his release. He was also twice arrested, and once convicted, for driving with a suspended license, and earned another theft conviction.
>
> The record demonstrates that the trial court exercised its discretion and concluded this is not an extraordinary case warranting dismissal of the strike. Under the facts and circumstances presented, the trial court did not abuse its discretion.

Morrishow, 2012 WL 1229492 at **3-4.

California courts retain discretion under the Three Strikes Law to strike prior felony conviction allegations. Romero, 13 Cal. 4th at 530. However, "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68. Specifically, a claim that a state court abused its discretion in denying a Romero motion is not cognizable on federal habeas review. Brown v. Mayle, 283 F.3d 1019, 1040 (9th Cir. 2002) (vacated on other grounds by Mayle v. Brown, 538 U.S. 901 (2003)). Here, petitioner's argument that the state courts misapplied California sentencing law is not cognizable on federal habeas review. Thus petitioner is not entitled to relief on this claim.

/////
/////
/////
/////

1  In sum, based on the foregoing, the court will deny the petition for writ of habeas corpus.

Accordingly, IT IS HEREBY ORDERED THAT:

1. The petition for writ of habeas corpus (ECF No. 1) is denied; and

2. The Clerk of Court shall close this case.

Dated:  May 15, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / morr2982.hc